# IN THE COURT OF APPEALS OF IOWA

———————————

No. 24-1073
Filed January 28, 2026

———————————

**Rodney Lee Borushaski,**
Applicant–Appellant,
v.
**State of Iowa,**
Defendant–Appellee.

———————————

Appeal from the Iowa District Court for Polk County,
The Honorable Karen Romano and The Honorable Christopher Kemp,
Judges.

———————————

**AFFIRMED**

———————————

Gary Dickey of Dickey, Campbell, & Sahag Law Firm, PLC, Des Moines,
attorney for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney
General, attorneys for appellee.

———————————

Considered without oral argument
by Ahlers, P.J., Chicchelly, J., and Bower, S.J.
Opinion by Bower, S.J.

**BOWER, Senior Judge.**

Rodney Borushaski appeals from the district court's denial of his second application for postconviction relief (PCR). Upon our review, we affirm.

## BACKGROUND FACTS AND PROCEEDINGS

> Bob and Marilyn Blewer were murdered in their trailer at the Iowa State Fair in 1996. The Blewers' daughter, Jamie; her husband, Rodney Borushaski, and Jeremy Sneed were charged with the murders.[1] Following a jury trial, Rodney Borushaski was convicted of two counts of murder in the first degree and sentenced to life imprisonment.

*Borushaski v. State*, No. 01-1683, 2003 WL 183284, at *1 (Iowa Ct. App. Jan. 29, 2003). This court affirmed Borushaski's convictions on direct appeal, rejecting his challenges to the district court's submission of a felony-murder instruction and refusal to permit a defense witness to testify about Sneed's statements to Marilyn Blewer during an argument a few days before the murders. *State v. Borushaski*, No. 97-0266, at *5–13 (Iowa Ct. App. Sept. 30, 1998). Procedendo issued in December 1998.

In 2000, Borushaski filed a PCR application, raising claims of ineffective assistance of trial and appellate counsel and newly-discovered evidence. Following a hearing, the district court denied Borushaski's claims. Borushaski appealed, and this court affirmed. *Borushaski*, 2003 WL 183284, at *1–3.

In 2018, Borushaski filed a second PCR application,[2] raising claims of ineffective assistance of PCR counsel, newly-discovered evidence, and actual

---

[1] Jamie and Sneed were also found guilty of the Blewers' murders.

[2] Borushaski amended his application several times.

innocence. In short, Borushaski maintained he was not involved with the murders, relying on affidavits from various people recounting statements made by Jamie or Sneed which he alleged supported his claims. The State moved to dismiss Borushaski's application as time-barred under the three-year statute of limitations in Iowa Code section 822.3 (2018). The State further argued the record did not support Borushaski's claims of newly-discovered evidence and the claims were previously litigated in his first PCR action. In two orders,[3] the district court dismissed Borushaski's claims. He appeals.

## STANDARD OF REVIEW

"We generally review postconviction proceedings, including summary dismissals of postconviction-relief applications, for errors at law." *Moon v. State*, 911 N.W.2d 137, 142 (Iowa 2018). When the district court dismisses an application for postconviction relief prior to trial, *see* Iowa Code § 822.6, we apply summary judgment standards on review, *Moon*, 911 N.W.2d at 142.

## DISCUSSION

Iowa Code section 822.3 requires PCR applications to "be filed within three years from the date the conviction or decision is final or, in the event of an appeal, from the date the writ of procedendo is issued." Borushaski acknowledges his application was filed outside the three-year deadline. Instead, he relies on the statute's exception to its limitation period:

---

[3] A hearing took place in September 2018, after which the court entered an order dismissing most of Borushaski's claims but finding a claim of actual innocence survived summary judgment. Following a second hearing in May 2024, the court dismissed the surviving actual-innocence claim, as well as additional claims Borushaski had raised since.

"However, this limitation does not apply to a ground of fact or law that could not have been raised within the applicable time period." Iowa Code § 822.3.

For this exception to apply, there must be a nexus between the asserted ground of fact and the challenged conviction. *Harrington v. State*, 659 N.W.2d 509, 520 (Iowa 2003). "This additional requirement is based on the common sense conclusion that it would be absurd to toll the statute of limitations pending the discovery of a trivial fact that could not possibly affect the challenged conviction." *Id.* An exonerating ground of fact must therefore be relevant to that conviction. *Id.* at 521. "By 'relevant' we mean the ground of fact must be of the type that has the potential to qualify as material evidence for purposes of a substantive claim under section 822.2." *Id.*

Borushaski challenges the court's dismissal of his claims relating to the following alleged new grounds of facts and/or newly-discovered evidence:

- Affidavit from his son, Gunnar Borushaski, stating Gunnar visited Jamie in prison "approximately three years and one half years ago," at which time Jamie said Borushaski "was innocent."

- Affidavit from his daughter, Samantha Borushaski, attesting Jamie "answered 'yes,' that she had admitted" to Gunnar "that she was involved, and that my dad, Rodney Borushaski, was innocent."

- Affidavit from Rhett Nelson, who had been "involved in an intimate relationship with Jamie," stating Jamie "confessed" Borushaski "had nothing to do with the murders."

4

- Affidavit from his father, Dan Borushaski, stating in 1996, his wife Linda informed him she overheard "two of the members seated on the jury" discussing Borushaski's criminal trial in the restroom and one of the jurors said "I don't know who to believe"; Dan "took this information to [his] son's attorney, who instructed him, "Shut up. . . . This is not gonna end in a mistrial."

- Affidavit from his stepmother, Linda Borushaski, attesting to overhearing the above-mentioned conversation between two jurors in the restroom.

- Three affidavits from his mother, Sharon Scritchfield: attesting to overhearing the above-mentioned conversation between two jurors in the restroom; stating Jamie declared immediately after learning Borushaski had been arrested he "had nothing at all to do with the murders of her mom and dad"; and attesting to a letter she found, addressed to Jamie, from Sneed's former cellmate, stating Borushaski "was not at fault" for the murders and Sneed said Borushaski "was innocent."

- Affidavit from his brother, Doug Borushaski, stating Jamie "wanted [her parents] dead" and she planned to kill them and take their money "so she could use it when she left [Borushaski]" and "[a]t one point she supposedly admitted to my mother that she knew the real story and that [Borushaski] was innocent . . . ."

- Affidavit from Sneed's cellmate, Jeff Sawvel, stating Borushaski was not involved with the murders.

After two hearings, the PCR court denied relief to Borushaski. As the PCR court noted, the record from Borushaski's criminal trial establishes Jamie denied Borushaski had any involvement with the murders; for example, when she was asked, "Were you ever aware of any plan or intent on the part of your husband, Rodney Borushaski, to do anything to hurt your parents?" she responded, "Absolutely not." We further observe by the time of the hearing on his first PCR application in 2001, Borushaski recounted "newly discovered evidence," which included "Jamie admitting to people that, hey, you know, she was involved in it, that I wasn't"; Sneed requesting Borushaski to be "let go because I was not involved in this"; and additional details about Jamie's relationship, conversations, and written correspondence with Sneed.

Upon our review, even viewing the record in the light most favorable to Borushaski, his claims fail. As the PCR court noted, although Borushaski's claims "create[] additional layers of nebulousness," "both sides accurately argue the record is devoid of information as to when Borushaski learned of the 'newly discovered' evidence and proof that it could not have been raised earlier." Moreover, the evidence is not "of the type that has the potential to qualify as material evidence for the purposes of a substantive claim under section 822.2." *See Harrington*, 659 N.W.2d at 520. Indeed, on Borushaski's direct appeal of his underlying convictions, this court highlighted his "confession to [a fellow inmate]," as well as "four witnesses who testified to [his] desire to have the Blewers killed and to his planning of the murders," observing "[t]here was overwhelming evidence presented at trial to support that [he] planned the Blewers' murder and robbery." *Borushaski*, No. 97-0266, at *11, 13.

In short, the evidence Borushaski now challenges has either been previously considered, is unlikely to change the result of trial, or was based on historical information available to him if he looked. *See, e.g.*, *Borushaski*, 2003 WL 183284, at \*3 (rejecting a claim of newly-discovered evidence "consisting of letters between his wife, Jamie, and Jeremy Sneed, and statements made by Jamie after Borushaski's trial"); *Tooson v. State*, No. 24-0854, 2025 WL 2407598, at \*3 (Iowa Ct. App. Aug. 20, 2025) ("Tooson does not provide information or evidence that supports any merit to this claim. [He provides only] information that was available to Tooson if he looked."). For these reasons, we affirm the district court's dismissal of Borushaski's second PCR application.

**AFFIRMED.**